589 So.2d 575 (1991)
YAMAHA MOTOR CORPORATION, U.S.A.
v.
BONFANTI INDUSTRIES, INC., d/b/a Bonfanti Marine and the Louisiana Used Motor Vehicle and Parts Commission.
No. CA 90 1504.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Harry J. Philips, Jr., Baton Rouge, for plaintiff-appellee Yamaha Motor Corp., U.S.A.
William A. Morvant, Baton Rouge, for defendant-appellant Bonfanti Industries, Inc., d/b/a Bonfanti Marine, et al.
*576 Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action is a petition for judicial review of an administrative decision by the Louisiana Used Motor Vehicle and Parts Commission (Commission). Bonfanti Industries, Inc. (Bonfanti), a marine products dealer, filed a complaint with the Commission asserting that Yamaha Motor Corporation, U.S.A. (Yamaha), a marine products distributor, violated La.R.S. 32:774(J)(3)[1] because Yamaha, without just cause or provocation, failed to renew its dealership contract with Bonfanti. Yamaha responded that its dealership contract with Bonfanti was executed before the effective date of Act 168 of 1987 (Act 168) which enacted La.R.S. 32:774(J)(3), Act 168 could not be applied retroactively to affect the substantive contractual rights of Yamaha, and the Yamaha-Bonfanti contract expired by its own terms. The Commission ruled that Act 168 applied to the Yamaha-Bonfanti contract, and Yamaha did not have just cause or provocation to cancel (refuse to renew) its dealership contract with Bonfanti. Yamaha appealed to the Nineteenth Judicial District Court (19th JDC). La.R.S. 32:776(B). Bonfanti filed a peremptory exception raising the objection of res judicata asserting that the question of the retroactivity of Act 168 was definitively decided against Yamaha in a prior judicial proceeding between the parties. The 19th JDC overruled the exception. Yamaha filed a motion for summary judgment based on a joint stipulation of facts executed by the parties. The 19th JDC ruled as a matter of law that Act 168 could not be applied retroactively to the Yamaha-Bonfanti dealership contract, granted the summary judgment, and dismissed Bonfanti's claims against Yamaha with prejudice. Bonfanti took this suspensive appeal.

UNDISPUTED FACTS
Yamaha and Bonfanti entered into a dealership contract effective September 3, 1986. The contract provided for termination at any time for cause. The contract further provided that in the absence of cause it would automatically terminate on a date certain with the following language:
5. TERMINATION
5.1 Effectiveness. This Agreement shall be effective upon the execution by Dealer and by an authorized officer of Yamaha at Cypress, California, and shall automatically terminate on September 30, 1987, unless terminated earlier as provided herein. Yamaha in its sole discretion may renew this Agreement. (Underscoring in original)
La.R.S. 32:774(J)(3) was enacted by Acts 1987, No. 168 and provided as follows:
It shall be unlawful and shall constitute a violation of the Unfair Trade Practice and Consumer Protection Law for a manufacturer or distributor of marine products to unfairly, without just cause or provocation, cancel the franchise of any marine dealer without just cause and without written notice delivered to the marine dealer no less than ninety days prior to such cancellation. The nonrenewal of a franchise or selling agreement with a marine dealer, or his successor, without just cause or provocation or the refusal to approve a qualified transferee or qualified successor to the marine dealer as provided for in the franchise or selling agreement shall be deemed an evasion of this Subparagraph and shall constitute an unfair cancellation, notwithstanding any contrary provision of the franchise or selling agreement. It shall not be an unlawful violation if the cancellation arises out of financial default of the marine dealer or conviction of a crime punishable by imprisonment when the offense for which the dealer was convicted includes fraudulent activity of the dealer. (Emphasis added)
Acts 1987, No. 168 does not specify an effective date, and, pursuant to La.Const. *577 of 1974, art. III, § 19, it became effective on September 1, 1987.
By letter dated October 13, 1987, Yamaha told Bonfanti it did not intend to renew the 1986 dealership agreement.

OBJECTION OF RES JUDICATA

(Assignment of error 1)
Bonfanti asserts the doctrine of res judicata prevents Yamaha from contesting the subject matter jurisdiction of the Commission and the retroactive application of Act 168 because of the final and definitive judgment rendered in Yamaha v. Bonfanti and the Commission, number 334,425 on the docket of the 19th JDC (Yamaha I), and the trial court in the instant case (Yamaha II) committed error by overruling Bonfanti's peremptory exception raising the objection of res judicata. A review of the record in Yamaha I is essential to adjudicate this assignment of error.
Yamaha I was filed by Yamaha against Bonfanti and the Commission on August 26, 1988. Yamaha I is an action for a declaratory judgment,[2] La.C.C.P. art. 1871 et seq., seeking rulings that the Commission "is without subject matter jurisdiction or authority to hear, decide or adjudicate a dispute between Yamaha and Bonfanti ... arising out of the termination of the Agreement..." and Act 168 "is not applicable to the Agreement which was executed prior to the effective date of said act." The petition alleges that on April 5, 1988, Bonfanti filed a complaint against Yamaha with the Commission alleging that the refusal of Yamaha to renew the dealership contract was a violation of La.R.S. 32:774(J)(3) for which the Commission could grant relief.[3] On September 15, 1988, Bonfanti filed a declinatory exception raising the objection of lis pendens,[4] La.C.C.P. art. 925(3), and a dilatory exception raising the objection of prematurity, La.C.C.P. art. 926(1). In this pleading, Bonfanti asserted "the rights and legal relationships between Yamaha and Bonfanti Marine are directly affected and controlled by LSA-R.S. 32:771 et seq.", the Commission "is empowered to conduct a hearing to determine whether a violation of any provision of ... Title 32 has occurred", and that "the present action by petitioner is premature until the resolution of that administrative proceeding and the exhaustion of all available administrative remedies." On March 2, 1989, the trial court signed an amended judgment that (1) overruled the declinatory exception, (2) sustained the dilatory exception raising the objection of prematurity, and (3) dismissed Yamaha I without prejudice. No reasons for judgment are in the Yamaha I record.
Bonfanti asserts that Yamaha II "is a dispute concerning the same parties, is based on the same cause of action, and demands the same thing as was previously presented to the court in ..." Yamaha I. Bonfanti contends that because Yamaha I was an action for a declaratory judgment and was dismissed for prematurity does not preclude the application of the doctrine of res judicata. Finally, Bonfanti claims that the "judgment in suit number 334,425 [Yamaha I] clearly and affirmatively *578 addressed and adjudicated the issues regarding the subject matter jurisdiction of the LUMVC [Commission] to hear the claim of Bonfanti Marine as well as the proper application of Act 168 of 1987."
La.C.C.P. art. 1841 provides as follows:
A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
A judgment that determines the merits in whole or in part is a final judgment.
La.C.C.P. art. 1842 provided "A final judgment is definitive when it has acquired the authority of the thing adjudged."[5] (Emphasis added). The Official Revision Comment for La.C.C.P. art. 1842 provided as follows:
The last paragraph of the source provision states that the definitive judgments have the force of res judicata. However, no attempt has been made to define the term "res judicata," since the Civil Code definition is sufficient. See Civil Code Arts. 2286 [repealed; see, now, R.S. 13:4231] and 3556(31). The term "thing adjudged" is employed in the above article to conform with the Civil Code terminology.
See, also, Comments under Art. 1673, supra.
The definition of the "thing adjudged" is stated in La.C.C. art. 3556(31) as follows:
Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal. (Emphasis added)
At all times pertinent hereto[6], the essential elements of the doctrine of res judicata were set forth in La.R.S. 13:4231, as enacted by Acts 1984, No. 331, effective January 1, 1985, as follows:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
When a final judgment has acquired the authority of the thing adjudged, it is conclusively presumed to be correct. La.R.S. 15:433.
An examination of the nature of the objection of prematurity and of the judgment that sustained it is necessary to adjudicate Bonfanti's claims. The objection of prematurity is provided for in La.C.C.P. art. 423 which declares, in pertinent part, as follows:
When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after this right has accrued. (Emphasis added)
The jurisprudence holds that the objection of prematurity applies when a plaintiff did not exhaust his administrative remedies. Steeg v. Lawyers Title Insurance Corporation, 329 So.2d 719 (La.1976); R. Force and L. Griffith, The Louisiana Administrative Procedure Act, 42 La.L.Rev. 1227, 1276-1277 (1982). The objection of prematurity is raised in the dilatory exception. La.C.C.P. art. 926(1). The function of the dilatory exception is to retard the progress of an action, and not to defeat the action. La.C.C.P. art. 923. Pursuant to La.C.C.P. art. 933, "If the dilatory exception pleading prematurity is sustained, the suit shall be dismissed." Official Revision Comment (c) for La.C.C.P. art. 933 provides as follows:
Under Art. 158, Code of Practice of 1870, the effect of sustaining the exception *579 pleading the prematurity of the action is the dismissal of the action. This rule has been retained. Such dismissal, however, is without prejudice to the plaintiff's right to bring the action anew when matured. (Emphasis added)
The effect of judgments of dismissal is provided for in La.C.C.P. art. 1844 as follows:
A judgment of dismissal with or without prejudice shall be rendered and the effects thereof shall be regulated in accordance with the provisions of Articles 1671 through 1673. (Emphasis added)
La.C.C.P. art. 1673 specifically provides, in pertinent part, that "A judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action." (Emphasis added). The Official Revision Comment for La.C.C.P. art. 1673 provides as follows:
A judgment of dismissal with prejudice is not a definitive judgment, but merely a final judgment and subject to the rules governing such judgments. See Arts. 1841 and 1842, infra. A case dismissed without prejudice can be reinstituted; the judgment rendered therein is neither final nor definitive. (Emphasis added)
In People of Living God v. Chantilly Corporation, 251 La. 943, 207 So.2d 752 (1968), the plaintiff cumulated two causes of action, and the defendant filed a dilatory exception raising the objection of improper cumulation of actions. The trial court sustained the dilatory exception and ordered the plaintiff to amend its petition to elect an action in fifteen days. The plaintiff did not do so, and, on the defendant's motion, the trial court dismissed the plaintiff's petition without prejudice. The court of appeal affirmed. The Louisiana Supreme Court granted certiorari to decide "[W]hether or not the Court of Appeal was correct in holding that the interlocutory judgment (which sustained the exception of improper cumulation) was not reviewable on an appeal taken from the subsequent judgment which dismissed the suit without prejudice following plaintiff's failure to elect." People of Living God, 207 So.2d at 753. In finding that the Court of Appeal should have reviewed the judgment sustaining the dilatory exception, the court stated, in pertinent part, as follows:
True, the judgment of dismissal herein is not final in the sense that it disposes of the merits of the controversy. But it is final and determinative of the issue of whether or not plaintiff may cumulate its two demands in one suit. This is so because, if plaintiff is required to pursue its demands in two separate actions, when judgments are finally rendered on the merits in those cases the question of whether it should have been permitted to try them together in one suit (as it insists it is entitled to do) will then be moot.
We view the dismissal of a suit without prejudice as one akin to, and as having the same effect as (for the purposes of this discussion), a judgment of nonsuit provided for under the old Code of Practiceit neither decides the merits, it does not prevent the bringing of the same cause of action in a new suit, and it cannot be pleaded as res judicata. (Emphasis added)
People of Living God, 207 So.2d at 754.[7]
The above cited provisions of the Civil Code, Code of Civil Procedure and Revised Statutes are statutes, and, as such, must be interpreted in reference to each other, and according to the standard rules of statutory interpretation. La.C.C. art. 13; Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). The judgment rendered in Yamaha I was final only for purposes of appealing the ruling on the prematurity issue; the judgment was neither final nor definitive for purposes of the merits of Yamaha I as a matter of law. La.C.C.P. arts. 423 and 1673. Because the Yamaha I judgment was neither final nor definitive for the merits *580 of the case, the doctrine of res judicata does not apply. La.C.C. art. 3556(31) and La.R.S. 13:4231. The trial court properly overruled the exception.
This assignment of error is without merit.

RETROACTIVITY OF ACT 168

(Assignments of error 2, 3 and 4)
Bonfanti asserts that the trial court erred in finding that La.R.S. 32:774(J)(3) required retroactive application to resolve this dispute, in failing to find that La.R.S. 32:774(J)(3) was amenable to retroactive application, and in granting summary judgment for Yamaha.
The Bonfanti-Yamaha dealership contract is clear and unambiguous in providing that in the absence of cause the contract would automatically terminate on September 30, 1987. The contract also stated Yamaha, in its sole discretion, could renew the contract. These contractual (substantive) legal relations became effective (and enforceable) between Bonfanti and Yamaha on September 3, 1986. The pertinent language of La.R.S. 32:774(J)(3) is that "The nonrenewal of a ... selling agreement with a marine dealer ... without just cause or provocation ... shall be deemed an evasion of this Subparagraph and shall constitute an unfair cancellation, notwithstanding any contrary provision of the ... selling agreement." This law became effective on September 1, 1987. The only way Bonfanti can prevail in this litigation is if La.R.S. 32:774(J)(3) modified Yamaha's contractual (substantive) right to renew (or not renew) the Bonfanti-Yamaha contract solely at its discretion. A retroactive application of the statute is necessary to accomplish this. Bonfanti's argument that the application of La.R.S. 32:774(J)(3) does not impair the pre-existing contractual relations between the parties is without merit.
Pursuant to La.R.S. 32:775(A)(3), the Commission had subject matter jurisdiction to "deny an application for a license or revoke or suspend a license after it has been granted for ... any willful failure to comply with any provision of this Chapter [La.R.S. 32:771 et seq.] ..."[8] Pursuant to La.R.S. 32:776, the Commission "may deny any application for license, or suspend, or revoke a license issued, only after a hearing of which the applicant, or licensee affected, shall be given at least fifteen days written notice specifying the reason for denying the applicant a license, or, in the case of a revocation or suspension, the offenses of which the licensee is charged."[9] The Commission heard Bonfanti's complaint and rendered the following ruling concerning La.R.S. 32:774(J)(3):
Secondly, the commission considered whether La.R.S. 32:774(J)(3) was applicable to this dispute since the agreement in question existed prior to the enactment of the statute. The commission finds that La.R.S. 32:774(J)(3) is expressly directed at termination of such agreements and that the statute was enacted prior to the termination of the agreement in question. The commission therefore concludes that La.R.S. 32:774(J)(3) must be *581 applied to the termination of the agreement in question.
La.R.S. 1:2 provides as follows:
No Section of the Revised Statutes is retroactive unless it is expressly so stated.
La.C.C. art. 6 provides as follows:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
La.C.C. art. 6 and La.R.S. 1:2 superficially appear to conflict. However, it is a well established rule of statutory interpretation that when two conflicting statutes apply to the same situation, the one more specifically directed to the matter at issue must prevail as an exception to the more general statute. Lyman v. Town of Sunset, 500 So.2d 390 (La.1987); Goldking Properties Company v. Primeaux, 477 So.2d 76 (La. 1985). When applying this rule to La.C.C. art. 6 and La.R.S. 1:2, we should construe La.C.C. art. 6 as a general law applicable to all laws except those in the Revised Statutes, and La.R.S. 1:2 as a specific law applicable to the Revised Statutes. The wording of La.R.S. 1:2 is clear, free from ambiguity and should be applied as written. La.C.C. art. 9; La.R.S. 1:4; Bunch v. Town of St. Francisville, 446 So.2d at 1360. Act 168 is not retroactive because it does not expressly state that it should be. La.R.S. 1:2 does not distinguish between substantive, procedural and interpretive laws, as does La.C.C. art. 6.
What appears to be a simple exercise in statutory construction is complicated by the jurisprudence. In Winstead v. Ed's Live Catfish & Seafood, Inc., 554 So.2d 1237, 1241 (La.App. 1st Cir.1989), writ denied, 558 So.2d 570 (La.1990), the court cites La.R.S. 1:2 and then states the following:
According to the Louisiana Supreme Court's interpretation of civilian theory, however, the principle of non-retroactivity of existing legislation admits three exceptions: laws that suppress or lessen penalties, laws that are merely interpretive of existing legislation, and laws that the legislature has expressly or impliedly declared to be retroactive. Lott v. Haley, 370 So.2d 521, 523 (La.1979); Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331, 1338 (La.1978). One caveat to these exceptions is that a law will not be applied retroactively if doing so would unconstitutionally disturb vested rights.
In H. Johnson, Legislation-Procedure and Interpretation, Developments in the Law, 1983-84, 45 La.L.Rev. 341, 343-344 (1984), appears the following:
RETROACTIVITY
A voluminous dissertation could and should be written on retroactivity of legislation in Louisiana. Unfortunately, this is neither the time nor the place for such an exercise. But the decision in Coates v. Owens-Corning Fiberglass Corp. does present the opportunity to offer a few remarks on the subject.
Few people realize that a Louisiana statute provides that no section of the Revised Statutes is retroactive unless it is expressly stated to be. This codifies the usual rule for legislative enactments, and is the opposite of the customary rule for judicial pronouncements. Use of this principle might go a long way toward settling disputes over the application of an enactment. The results of application of this principle might not necessarily conform with some of the past jurisprudence, which developed certain "exceptions" to the rule of prospectivity. These exceptions are usually applied despite the fact that the legislature may not have expressed itself on the question of retroactivity as required by Louisiana Revised Statutes 1:2. Thus the judiciary has sometimes "assumed" that a retroactive application was intended in the face of legislative silence when the enactment falls into certain categories. A literal reading of Louisiana Revised Statutes 1:2 would eliminate these exceptions. The legislature is free to announce a retroactive application, of course, thus freeing the court from the need to make *582 such a decision, unless there are constitutional problems. (Footnotes omitted)
Article I, § 10 of the Constitution of the United States provides, in pertinent part, that "No State shall ... pass any ... Law impairing the Obligation of Contracts...." La.Const. of 1974, art. I, § 23 provides, in pertinent part, that "No ... law impairing the obligation of contracts shall be enacted." The term of a contract is one of its obligations. La.C.C. arts. 1777 and 1778. If a law purports to change the term of a contract, it will affect (impair) one of its obligations. The Bonfanti-Yamaha dealership contract has a fixed term, and, thus, it expired on September 30, 1987. That term only could be extended by the exercise of the sole discretion of Yamaha. Yamaha exercised its contractual right not to do so. La.R.S. 32:774(J)(3) can not be applied in this case to alter the contractual term lawfully agreed to by the parties.
The instant case is similar to the case of Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983). In Block, the plaintiff owned a vehicle that had uninsured motorist insurance coverage under the plaintiff's own policy and under his employer's fleet policy. When these coverages were obtained, Louisiana jurisprudence interpreting the Louisiana Uninsured Motorist Law, La.R.S. 22:1406(D), allowed the "stacking" of coverages (recovery up to the maximum from two or more policies). Effective September 9, 1977, Act 623 of 1977 amended La.R.S. 22:1406(D) to allow insurers to contractually prohibit the "stacking" of uninsured motorist coverages. Block was injured in an automobile accident on November 19, 1977, while in the course and scope of his employment. Both of the policies covering his vehicle had "anti-stacking" provisions. The Louisiana Supreme Court ruled that Act 623 of 1977 could not be applied retroactively to alter the contractual obligations between the parties and allowed Block to "stack" his coverages with the following rationale:
Article 1, Section 23 of the Louisiana Constitution prohibits the legislature from enacting any law which impairs the obligation of a contract. Where the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute. "A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." C.C. 8.
Policies issued in Louisiana are considered to contain all provisions required by statute.... Accordingly, R.S. 22:1406(D) is incorporated into every policy of insurance to which it is applicable, as if it were written in the policy itself. No insurance contract can include any provision inconsistent with or contradictory to any standard provision used or required to be used by the applicable sections of the Insurance Code. R.S. 22:623. Any policy provision which narrows the coverage mandated by the statute will not be considered.

In both cases before us the contract between the plaintiff and the insurance company was entered into when the jurisprudence permitted stacking. The accidents occurred after the passage of the anti-stacking amendment. The provisions in the contracts which are claimed to prevent stacking were invalid and unenforceable at the time the contracts were entered into....
Here the insurance policies were inconsistent with and contradictory to the provisions of R.S. 22:1406(D) as judicially interpreted. The obligations assumed by the insurers in both cases were assumed against a backdrop of R.S. 22:1406(D) before the anti-stacking amendment was passed. At the time the policies were issued the insurers knew that they were subjected to the risk of stacking of multiple UM coverages, in spite of the policy provisions. (Emphasis added; citations omitted)
433 So.2d at 1044.
The legal principles espoused in Block apply in the instant case. Act 168 was not in effect at the time Bonfanti and Yamaha executed the dealership contract. Act 168 *583 cannot be retroactively applied to alter the obligations (term) of that contract, even though the contract expired and Yamaha declined to renew it after the effective date of Act 168. The dealership contract was legal and not proscribed by any law when executed. The parties consented to the terms of a lawful contract and are bound by it.
Bonfanti's argument that this case is not suitable for a summary judgment is patently without merit. La.C.C.P. art. 966; Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La. 1991).
These assignments of error are without merit.

DECREE
For the foregoing reasons, the judgments of the trial court are affirmed. Bonfanti is cast for the cost of this appeal.
AFFIRMED.
NOTES
[1] The substance of La.R.S. 32:774(J)(3) was transferred to La.R.S. 32:773.1 by Acts 1990, No. 905. The definitions of a distributor of marine products, a marine dealer and a marine product are found in La.R.S. 32:771.
[2] The function of a declaratory judgment is to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. Watts v. Aetna Casualty and Surety Company, 574 So.2d 364 (La.App. 1st Cir.), writ denied, 568 So.2d 1089 (La.1990).
[3] The record of the proceedings before the Commission is not in the appellate record before us. See La.R.S. 49:964(D). This inadequacy of the appellate record is imputable to the appellant, Bonfanti. State ex rel. Guste v. Thompson, 532 So.2d 524 (La.App. 1st Cir.1988). An appellate court must render its judgment upon the record on appeal. La.C.C.P. art. 2164. The briefs of the parties are not part of the record on appeal, and facts referred to in briefs which are not in the record on appeal will not be considered by an appellate court. Tranum v. Hebert, 581 So.2d 1023 (La.App. 1st Cir.), writ denied, 584 So.2d 1169 (La.1991).
[4] The objection of lis pendens declines the jurisdiction of the court over a second suit where a prior suit is pending between the same parties, in the same capacities, on the same cause of action, and has the same object. La.C.C.P. art. 531; Maddens Cable Service, Inc. v. Gator Wireline Services, Ltd., 509 So.2d 21 (La.App. 1st Cir.1987). Apparently, Bonfanti asserted that an administrative proceeding was equivalent to a suit for purposes of the objection of lis pendens.
[5] La.C.C.P. art. 1842 has been repealed by Acts 1990, No. 521, but that legislation only applies to civil actions filed on or after January 1, 1991.
[6] La.R.S. 13:4231 has been amended and re-enacted by Acts 1990, No. 521, which only applies to civil actions filed on or after January 1, 1991.
[7] The rule that a judgment of dismissal without prejudice is appealable is applicable to involuntary dismissals without prejudice. If a party voluntarily obtains a judgment of dismissal without prejudice there is no right to an appeal. Dusenbery v. McMoRan Exploration Co., 425 So.2d 249 (La.App. 1st Cir.1982).
[8] The Commission does not have subject matter jurisdiction to rule on the constitutionality (as enacted or as applied) of a state statute. Appeal of Brisset, 436 So.2d 654 (La.App. 1st Cir.), writ denied, 441 So.2d 749 (La.1983). Nor does the Commission have subject matter jurisdiction to adjudicate the contractual legal relations existing between the parties pursuant to La.C.C. art. 1906 et seq., impose criminal sanctions pursuant to La.R.S. 32:779, or adjudicate public or private claims under the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401 et seq.
[9] Act 168 amended La.R.S. 32:773 to require that a dealer in marine products must be licensed. Act 168 amended La.R.S. 32:771 to define (1) a marine product, (2) a marine dealer, and (3) a manufacturer or distributor of marine products. Act 168 did not require manufacturers or distributors of marine products to be licensed. The civil sanctions provided for in La.R.S. 32:780 only apply to applicants for licenses and licensees. Query: If a distributor of a marine product violated La.R.S. 32:774(J)(3) after the effective date of Act 168, what sanction could be imposed by the Commission? Acts 1990, No. 905 amended La.R.S. 32:773 to require a manufacturer or distributor, who holds a current contract, selling, or franchise agreement with a licensed marine dealer, to get a license.