597 So.2d 567 (1992)
Devan PARDUE
v.
Ron GOMEZ.
No. CA 91 1505.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Denied May 15, 1992.
Hobart Pardue, Springfield, for appellee.
Frederick Whitrock, Baton Rouge, for appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action is a petition for judicial review of an administrative decision on a procedural issue. The permittee applied to the Secretary of the Department of Natural Resources of the State of Louisiana (DNR) to modify an existing permit. DNR in essence held that the permittee was required to apply for a new permit, and could not proceed by way of a modified permit. The permittee took this appeal to the district court.[1] A trial de novo was held in the district court. La.R.S. 49:213.16(F); La.R.S. 49:964(A). The district court ruled that the permittee could utilize an application for a modified permit and ordered the DNR to modify the previously issued permit according to plaintiff's plans. The district court also assessed DNR with an attorney fee of $1,500. From this judgment, DNR took this suspensive appeal. Plaintiff answered the appeal seeking a $6,000 increase in the attorney fees.

*568 FACTS
Plaintiff, Devan Pardue, is the owner and operator of the Riverside Tavern and Oyster Bar, formerly Riverside Seafood Restaurant, located at the intersection of Louisiana Highway 22 and the Tickfaw River in Livingston Parish, Louisiana. This litigation arises out of disputes over proposed modifications to a coastal use permit issued to Pardue by DNR. In Pardue v. Stephens, 558 So.2d 1149 (La.App. 1st Cir.1989), this court affirmed the portion of a trial court judgment ordering DNR to issue a permit for a parking lot next to the restaurant. This court reversed the portion of the trial court judgment which ordered DNR to issue permits for dredging a slip for permanent docking of a barge to be used as a restaurant and installation of bulkheads on the north and east sides of the slip.
On January 26, 1990, DNR issued a permit to Pardue to construct a parking lot on 1.2 acres adjacent to his restaurant using approximately 5,710 cubic yards of fill material. This permit provides in pertinent part as follows: "[T]his permit authorizes ONLY landfill for a parking area as detailed on sheet 2 of 3 of the permit plats. Dredging of the `proposed slip for barge', also shown on Sheet 2 of 3 of the permit plats, any other shoreline modifications or the placement of any structures on the landfill area is specifically NOT authorized by this permit."
To proceed with his plans to build the parking lot, Pardue next attempted to obtain a permit from the United States Army Corps of Engineers (Corps of Engineers). Pardue testified that the Corps of Engineers informed him that since this court reversed the portion of the trial court's order allowing dredging of the slip for the barge, he might have a problem getting a permit for the parking lot unless further water dependent uses were made of the property. The Corps of Engineers suggested Pardue construct a boat launch and rock bulkhead in addition to the parking lot. The proposed boat launch would measure approximately 30 feet in width, 60 feet in length and 6 feet in depth. The dimensions of the rock bulkhead would be approximately 15 feet in width and 160 feet in length. Pardue contacted DNR about getting his coastal use permit modified to allow construction of the boat launch and rock bulkhead. Pardue met with Ron Gomez in March of 1990 to discuss this matter and was referred to the Chief of the Permit Section of the Coastal Management Division of DNR, Lynn Wellman. Gomez in a letter to Pardue dated April 12, 1990, stated in part as follows:
I have carefully reviewed your proposal to add a boat launch to the facility you currently operate. Because the boat ramp, bulkhead and fill behind the bulkhead will constitute a new use, you should apply for a Coastal Use Permit for this new activity. I recommend that you do this rather than modify the permit you recently received for the additional parking. I suggest this because some questions concerning the permit authorizing the parking lot, now that you have removed the barge, may arise if the new uses are considered as a revision to that permit. Please submit your application directly to the Coastal Management Division with the accompanying $20 application fee so that expeditious processing may occur. If you have any questions or need assistance concerning filing of an application, please contact Mr. Lynn Wellman of the Coastal Management Division Permits Section.
Pardue in an April 25, 1990 letter to Gomez, stated in pertinent part, as follows:
By the definition of modification, my proposal for modification of this permit keeps the general purpose and effect of this permit in tact [sic] because the permitted parking lot will still serve as a parking lot and will still serve as a parking lot for a restaurant facility and the primary parking problem has been from the evening hours to the early a.m. hours. Therefore, congested boat launch parking will have been gone before the problem of congested restaurant parking ever arises.
. . . . .

*569 Since a mutual agreement could not be reached between myself and Mr. Lynn Wellman, I ask that you agree to this modification within 15 days in writing or I will consider this modification request denied.
Ron Gomez responded with a letter to Pardue dated May 3, 1990 that provides, in pertinent part, as follows:
This will acknowledge receipt of your referenced letter requesting modification of your Coastal Use Permit P870030. Our office has previously advised you that the new work you propose will require authorization of this agency. You may choose either to apply for a new permit or to have your permit (P870030) modified. The former, in my opinion, would be most advantageous to you because it assumes the existence of adequate parking facilities. Should you decide that, for whatever reason, you wish to modify your existing permit, we will be required to consider and evaluate the parking lot also.

Regardless of which option you choose, and after considering the points you raised in your letter, I have determined that your request for authorization to perform this new work does not qualify for any exemption from the public notice procedure. (Emphasis added)
The essence of this ruling is that Pardue was required to utilize an application for a new permit and the procedures attendant thereto; Pardue could not properly proceed by way of an application for a modification of an existing permit. DNR did not make a decision on the merits of Pardue's application.
Thereafter, Pardue brought this action (appeal).
At the district court trial, Devan Pardue testified that he thought about 150 boats per day would use his boat launch on the weekends. He indicated that he would be able to employ more people if the boat launch were built. He testified that it would benefit the economy and bring more patrons into his existing business establishment and nearby businesses. He testified that he would charge a fee for boats to launch. Pardue admitted there would be an increase of boat traffic on the river if his launch is built.
James Reeves, the Assistant Director and former Permit Section Manager of DNR, testified that in making the determination of whether an activity would cause significant impacts, DNR does not distinguish between, or weigh, adverse and beneficial impacts. He explained a finding of significant impacts does not affect whether a permit application will be issued. It simply means that the application must go out on public notice. Reeves testified he has reviewed approximately 40 or 50 applications to build boat launches and they typically have environmental, societal and economic impacts.
Dr. Keith Bancroft testified that the construction of the boat launch and rock bulkhead would have no adverse impact on the environment. Although he stated that the bulkhead may prevent erosion of the shoreline in that area, he did not know if erosion was a problem in this section of the river.
Dr. Gary Childers, an expert in environmental microbiology, testified that the environmental impact would be "minuscule". He stated that the bulkhead would have a positive impact on the shoreline.
Dr. Robert Turner, an expert in the field of wetland ecology, testified that both the boat launch and rock bulkhead would have a significant impact on the environment. In response to the question of what impacts would result from the boat launch, Dr. Turner replied as follows:
Two areas. One, water quality, just I suppose aesthetics, but the number of peoplethere is going to be more litter, trash, there is going to [sic] refuge [sic] that has to be desposed [sic] of, liquid and solids and the second area is the physical activity of the boats just turning around. I mean, animals would be scared away, sediment in the river will be stirred up, just the boat itself and the prop and the activity all down the river, of course, not just at the boat ramp. *570 Dr. Turner testified the rock bulkhead would have a significant impact because the shoreline would be "converted into a man-made environment".
Lieutenant Wayne Brescher of the Louisiana Department of Wildlife and Fisheries (DWF) handles boating enforcement and safety on the Tickfaw River. He testified there can be two or three hundred boats on the river at any one time during the summer. The large number of boats has created a problem with alcohol, and as a result DWF has started a D.W.I. task force to combat the problem. Brescher testified that the area of the river in front of Pardue's establishment is congested. He indicated that a boat launch at this spot would increase enforcement problems, safety problems and traffic problems. In response to the question of whether the proposed boat launch would increase the number of boats on the river, Brescher testified as follows:
Q. If a boat launch was put in this area, do you know where those boats would come from?
A. Probably from local people, and probably some people from out, you know, in Baton Rouge and out of the parish.
Q. Do you think that some of that or all of that would result from overflow from people who are already launching, say, from other boat launches in the area?
A. Possibly.
Q. Do you think some of it would come from new boats in the area?
A. New boats, yes, it would be. Because of the existing areasbecause of the existing boat launches in the area, you know, people go to each one of these because they have been there in the past and with a new launch opening up, it would bring new boats in from, you know, outside of the area.
Q. So, you think that by placing a boat launch there it would be [sic] significantly increase the number of boats on the river?
A. Yes it would. I would think it would definitely.
Finally, Fieldon Wheat of the Livingston Parish Sheriff's Department testified that despite the long lines at the existing boat launches, he did not feel that boat traffic on the river would increase with the addition of the proposed launch.
The trial court's written reasons for judgment provide, in pertinent part, as follows:
In Devan Pardue v. Ron Gomez, the basic issue before this Court is whether or not the Coastal Management Division of the Louisiana Department of Natural Resources acted reasonably in determining that a modification of petitioner's original permit in order to construct an additional boat launch and rock bulkhead would significantly increase the impacts of the permitted activity so as to require him to obtain a new permit.
* * * * * *
After careful consideration of the record adduced in the case at bar, this Court hereby finds that the Department did, in fact, act arbitrarily and capriciously in denying the modification requested. In so holding, this Court feels that plaintiff has proved, by a preponderance of the evidence, that the change involving less than one-tenth of an acre would not significantly impact adversely the ecology of the area. Most convincing on this point was the testimony of Dr. Gary Childers and Dr. Keith Bancroft, who both testified that the change creating a boat launch and rock bulkhead while at the same time eliminating part of the fill-in of the fresh-water swamp would make no difference whatsoever in the impact of petitioner's endeavor on the ecology of the area. In this regard, it should be noted that under the guidelines formulated by the Department, "Changes which would significantly increase impacts of a permitted activity shall be processed as new applications." Therefore, since the suggested change in the present case would not significantly increase the impact of the activity originally permitted by the Department, there is no basis for requiring plaintiff's modification to be processed as a new application. (Emphasis added)
*571 However, in its judgment, the district court ordered DNR to modify the existing permit to allow the boat launch and bulkhead. Thus, the district court acted on the merits of the application even though DNR had not done so. The district court also held that DNR was arbitrary and capricious in failing to modify the permit and, pursuant to La.R.S. 49:965.1, ordered DNR to pay $1,500 in attorney fees.

FAILURE TO FOLLOW APPLICABLE COASTAL MANAGEMENT LAW, RULES AND GUIDELINES

(Assignments of error 1 and 3)
DNR contends "the trial court err[ed] in determining that the addition of a boat launch and rock bulkhead would not need to be processed as a new permit...." DNR also asserts the trial court erred "when reviewing the coastal use permit decision by the Secretary of the Louisiana Department of Natural Resources when it failed to base its decision on application of the provisions of the Louisiana State and Local Coastal Resources Management Act (La.R.S. 49:213.1 et seq)[2], the "Rules and Procedures for Coastal Use Permits"[3], and the Coastal Use Guidelines." (Footnotes added.)
The guidelines applicable to this case are Guidelines 1.6, 1.7 and 1.8 which were listed in their entirety in our decision in Pardue v. Stephens, 558 So.2d at 1164, 1167.
Louisiana Administrative Code 43:I.723(D) provides, in pertinent part, as follows:
1. Modifications
a. The terms and conditions of a permit may be modified to allow changes in the permitted use, in the plans and specifications for that use, in the methods by which the use is being implemented, or to assure that the permitted use will be in conformity with the coastal management program. Changes which would significantly increase the impacts of a permitted activity shall be processed as new applications for permits pursuant to Subsection C, not as a modification.

b. A permit may be modified upon request of the permittee:
i. if mutual agreement can be reached on a modification, written notice of the modification will be given to the permittee.
ii. if mutual agreement cannot be reached, a permittee's request for a modification shall be considered denied. (Emphasis added)
Thus, to determine whether Pardue should proceed by way of an application for a new permit, or by way of a modification of an existing permit, we must determine whether the boat launch and bulkhead would "significantly increase" the impacts of the parking lot.
To render the judgment he did, the district court had to make two determinations. First, he had to determine whether the proposed changes would significantly increase the impacts of the permitted activity to decide whether Pardue had to proceed by way of a modified permit application or by way of new permit application. If the answer to that question is in the negative, Pardue could proceed by way of a modified permit. Conversely, if the proposed changes significantly increased the impacts of the permitted activity, then Pardue must proceed by way of a new permit application. This was the only issue decided by DNR and the only issue brought to the district court by the appeal. The district court held that the impact on the ecology was not significant, and, thus, Pardue properly filed an application to modify an existing permit. Based on this ruling, the district court should have ordered DNR to rule on Pardue's application for a modified permit. Instead, the district court *572 acted on the merits of the application (which were not before it) and ordered the modified permit issued.
The district court committed legal error in determining that the proposed changes would not significantly increase the impacts of the permitted activity. The district court found the construction of the boat launch and bulkhead "would not significantly impact adversely the ecology of the area." Although "significant impact" is not defined in the applicable statute, guidelines or rules, it is clear that the phrase includes societal and economic impacts, as well as ecological impacts. The statutes, rules and guidelines must be construed in reference to each other. La.C.C. art. 13; Tolis v. Cooper, 522 So.2d 594 (La.App. 1st Cir.), writ denied, 526 So.2d 796 (La.1988). Louisiana Administrative Code 43:I.701(G) (Guideline 1.7) provides, in pertinent part, as follows:
G. It is the policy of the coastal resources program to avoid the following adverse impacts. To this end, all uses and activities shall be planned, sited, designed, constructed, operated and maintained to avoid to the maximum extent practicable significant: [Guideline 1.7]
. . . . .
2. Adverse economic impacts on the locality of the use and affected governmental bodies. [b.]
. . . . .
6. Adverse disruption of existing social patterns. [f.]
(Emphasis added)
The district judge failed to consider the social and economic impacts in his reasons for judgment; he only considered the ecological (environmental) impacts.
The district court's legal errors have interdicted his judgment. Because the record before us is complete, we will proceed to make an independent review of the record and adjudicate the case. McLean v. Hunter, 495 So.2d 1298 (La.1986); Pardue v. Stephens, 558 So.2d at 1166.
A determination in this matter requires us to examine societal, economic and environmental (ecological) impacts. The trial testimony shows this section of the river is already congested with both boats and businesses. If the boat launch is built, approximately 150 boats per day will enter the river in this congested area. The addition of a 160 foot long rock bulkhead will change a natural shoreline along the river into a man-made environment. After a thorough review of record, and, in particular, the testimonies of Dr. Turner and Lt. Brescher, we find by a preponderance of the evidence that the proposed boat launch and bulkhead would significantly increase the impacts of the permitted parking lot. Therefore, these changes should be processed in a new application for a permit, and not as a modification of a permit. Our holding should not be construed as a comment on the merits of whether the new permit should, or should not, be granted after the analytical process required by Guideline 1.8 has been followed.
The trial court also committed legal error by adjudicating the merits of the application for a permit for the boat launch and bulkhead when no decision on those merits had been made by DNR (the administrative agency). It is well settled that an appeal for judicial review of an administrative agency's decision is premature until all administrative remedies have been exhausted. La.C.C.P. art. 423; Steeg v. Lawyers Title Insurance Corporation, 329 So.2d 719 (La.1976); Yamaha Motor Corporation, U.S.A. v. Bonfanti Industries, Inc., 589 So.2d 575 (La.App. 1st Cir. 1991). DNR did not address the merits of Pardue's application for a permit for the boat launch and bulkhead; DNR only ruled on whether Pardue had to proceed by way of modification of an existing permit or an application for a new permit. By rendering a judgment ordering the issuance of the modified permit, the district court ruled on the merits of the application even though DNR had not ruled on it and the issue was not properly before the court. Further, there is nothing in the record to show that the district court followed the analytical process required by Guideline 1.8 when he ruled on the merits. This is directly contrary *573 to our holding in Pardue v. Stephens, 558 So.2d at 1166.
These assignments of error have merit.[4]

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of DNR and against Pardue declaring that Pardue must proceed to get a permit for the boat launch and bulkhead by way of a new permit application. Pardue is cast for all costs of these proceedings.
REVERSED AND RENDERED.
NOTES
[1] La.R.S. 49:214.35(D) provides as follows:

Any person authorized by this Subpart to appeal a coastal use permit decision or any local government aggrieved by a final decision on approval of a local program may seek judicial review of that decision whether or not a petition for reconsideration has been filed under this Section. A preliminary, procedural, or intermediate action by the secretary or a determination of local or state concern under R.S. 49:214.30(C)(1) or of direct and significant impact under R.S. 49:214.34 is immediately reviewable if review of the secretary's final permit decision or action would not provide an adequate remedy or would inflict irreparable injury.
(Emphasis added).
It is arguable whether the procedural decision made by DNR herein is reviewable, however, DNR did not raise this issue in the district court.
[2] Pursuant to § 7 of Acts 1989, 2nd Executive Session, No. 6 and on authority of La.R.S. 24:253., La.R.S. 49:13.1 to 49:13.22 were redesignated as "Subpart C. Louisiana Coastal Zone Management Program" consisting of La.R.S. 49:214.21 to 49:214.40. The effective date of this redesignation was July 14, 1989 and therefore applies here. The redesignation did not change the law.
[3] The Rules and Procedures for Coastal Use Permits are found at § 723 of the Louisiana Administrative Code.
[4] Because we find merit in this assignment of error, it is unnecessary for us to address DNR's other assignments of error and the answer to the appeal.