695 So.2d 1090 (1997)
CROWN BEVERAGE COMPANY
v.
DIXIE BREWING COMPANY, INC.
No. 96-CA-2103.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1997.
Benjamin R. Slater, III, Mark E. Van Horn, Donald J. Miester, Jr., Slater Law Firm, New Orleans, for Plaintiff/Appellee Crown Beverage Company.
Robert S. Rooth, Corinne Ann Morrison, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, for Defendant/Appellant Dixie Brewing Company, Inc.
Before KLEES, ARMSTRONG and MURRAY, JJ.
ARMSTRONG, Judge.
This appeal from a preliminary injunction raises the question of whether a statute regulating contracts between beer suppliers and beer wholesalers is retroactive so as to regulate contracts entered into prior to the 1993 enactment of the statute. The preliminary injunction in this case was predicated upon the statute being retroactive, so as to regulate contracts entered into prior to the statute's 1993 enactment, and enjoined the defendant beer supplier from violating the statute and most particularly from terminating a contract entered into with the plaintiff beer wholesaler in 1990. We hold that the 1993 statute is not retroactive, and so does not regulate the 1990 contract at issue, and we vacate the preliminary injunction and remand for further proceedings.
*1091 The defendant beer supplier is Dixie Brewing Company, Inc. ("Dixie") and the plaintiff beer wholesaler is Crown Beverage Company ("Crown"). In 1989, Dixie filed for Chapter 11 bankruptcy from which it emerged, by a confirmed plan for reorganization, in 1993. On July 19, 1990, while in bankruptcy, Dixie entered into a Wholesale Sales Agreement ("the Agreement") with Crown. The "Term" provision of the agreement provides that the Agreement will run until terminated by one of the parties as allowed for by the Agreement. In particular, the Agreement allows Crown to terminate upon ninety days notice and allows Dixie to terminate upon thirty days notice. Crown's right to terminate is not qualified in any way and so, apparently, is an unrestricted right to terminate at will. Dixie is given the right to terminate if "in its sole discretion [it] determine[s] that [Crown] is deficient in any one or more of its obligations of performances herein set forth."
The Agreement provided Crown with a non-exclusive "Area of Sales Responsibility" or "ASR" of Orleans, St. Bernard, and Jefferson (excepting Grand Isle) Parishes and makes various provisions obligating Crown to maximize the sales of Dixie beer in that area. Crown is to "actively and effectively resell and promote [Dixie beer] to retailers and to develop and promote [Dixie beer] among retailers and consumers within" Crown's ASR. Crown is to "aggressively promote the sale and distribution of [Dixie beer]." Crown "expressly agrees to devote sufficient time, effort and resources to promote diligently [Dixie beer] to the full extent of [Dixie beer's] potential consumer acceptance" in Crown's ASR.
Dixie became concerned that sales of its beer by Crown were dropping dramatically while sales of Dixie beer by other wholesalers were increasing. Sales of Dixie beer by Crown dropped from 97,511 cases in 1991 to 54,984 cases in 1995 and 26,485 cases in the first six months of 1996 (annualized 52,970 cases for 1996). At the same time, sales of Dixie beer by all other wholesalers went from 81,402 cases in 1991 to 187,560 cases in 1995 and 86,161 cases for the first six months of 1996 (annualized 172,322 for 1996). Also, during approximately that same time period, the number of retail outlets in the Greater New Orleans area carrying Dixie beer declined from about 1,200 outlets to about 600 outlets. There are about 3,000 potential outlets in the Greater New Orleans area.[1]
Crown sells at least fifteen beers which compete with Dixie beer. Supermarkets in the Greater New Orleans area are the largest sellers of Dixie beer and are, therefore, very important retail outlets for Dixie. Dixie discovered that various supermarkets in the Greater New Orleans area would, at least at times, be "out of stock" of Dixie beer. Also, Dixie discovered that the amount of shelf space in Greater New Orleans area supermarkets which was allocated to Dixie beer (which allocation was typically under Crown's control) was much less than the shelf space allocated to other brands of beer sold by Crown. This allocation of shelf space tends to affect beer sales.
On July 2, 1996, Dixie hand delivered to Crown a letter giving thirty days notice of termination of the Agreement as provided for in the Agreement. Crown filed the present action against Dixie, contending, among other things, that the termination of the Agreement would violate Chapter 6 of Title 26 of the Revised Statutes, captioned "Business RelationsWholesalers and Suppliers of Beer," which appears at La. R.S. 26:801-812 (hereinafter "Chapter 6"), which had been enacted in 1993. Chapter 6, among many other provisions which impose sweeping and detailed regulation of contracts between beer suppliers and beer wholesalers, provides that a beer supplier may not terminate a contract with a beer wholesaler unless the beer supplier (1) has satisfied certain statutory notice requirements, (2) has acted in good faith, and (3) has "good cause" for the termination. La. R.S. 26:805.A. The statute also places upon the beer supplier the burden of proving those prerequisites for termination. La. R.S. 26:805.B. The statutory *1092 requirement of "good cause" is addressed in La. R.S. 26:805.D but it is not clear whether that provision describes the only circumstances which constitute "good cause" or whether it instead describes one, but not the only set of circumstances which constitute "good cause." In any case, it is apparent that Chapter 6's restrictions on termination, particularly its "good cause" requirement, are substantially inconsistent with Dixie's contractual right to terminate if "in its sole discretion" Dixie determines that Crown's performance is deficient.
Both because of Chapter 6's sweeping regulation of beer-supplier-wholesaler contracts in general, and because of its restrictions on beer suppliers' contract terminations in particular, it is readily apparent that Chapter 6, if retroactive so as to be applicable to the Agreement, would significantly change the substantive rights and obligations of Crown and Dixie under the Agreement. Consequently, Dixie argues both that Chapter 6 is not retroactive so as to be applicable to the Agreement and, alternatively, that if Chapter 6 is retroactive so as to be applicable to the Agreement, then Chapter 6 is unconstitutional in that respect as impairing the obligations of contracts. See U.S. Const. Art. I, § 10; La. Const. of 1974, Art. I, § 23. However, as we find that Chapter 6, enacted in 1993, is not retroactive, and does not apply to the 1990 Agreement, we need not address the issue of its constitutionality.
Chapter 6 itself provides that:
"This Chapter shall apply to agreements entered into or renewed after [Chapter 6's effective date of] May 26, 1993." La. R.S. 26:809(A). As to the Revised Statutes as a whole, of which Chapter 6 is a part: "No section of the Revised Statutes is retroactive unless it is expressly so stated." La. R.S. 1:2 (emphasis added). As to statutes in general, the Civil Code provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
La. Civ.Code art. 6. The Supreme Court has stated as follows as to the retroactivity of statutes:
The general rule against retroactive application of legislative enactments and its exceptions, is codified in LSA-C.C. art. 6. Cole v. Celotex Corp., 599 So.2d 1058 (La. 1992). It provides: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Additionally, LSA-R.S. 1:2 provides that no statute is retroactive unless it is expressly so stated. It does not distinguish between substantive, procedural and interpretive laws as does article 6, but is generally construed as being coextensive. See St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992).
Rousselle v. Plaquemines Parish School Board, 93-C-1916 (La.2/28/94), 633 So.2d 1235, 1244. The Rousselle decision also states that the first step is to ascertain if the statute expresses legislative intent as to whether or not it is retroactive and, if it does so express a legislative intent, then that is the end of the inquiry. Id.
We believe that the statute at issue in this case expresses a legislative intent that it not be retroactive and, in particular, that it not apply to contracts which predate the May 26, 1993 effective date of Chapter 6. "This Chapter shall apply to Agreements entered into or renewed after May 26, 1993." La. R.S. 26:809.A. Thus, Chapter 6 does not apply to the 1990 Agreement between Crown and Dixie.
Crown argues that a subsection of Chapter 6 requires that all contracts between beer suppliers and beer wholesalers that are in effect on May 26, 1993 be "renewed" and that such renewed contracts are subject to Chapter 6. Specifically, Crown relies on the emphasized language of the following subsection:
A supplier shall not do the following:
(1) Fail to provide each wholesaler of the supplier's brand or brands with a written agreement which contains in total the supplier's agreement with each *1093 wholesaler and designates a specific exclusive sales territory. Any agreement which is in existence on May 26, 1993, shall be renewed consistent with this Chapter, provided that this Chapter may be incorporated by reference in the agreement. However, nothing contained herein shall prevent a supplier from appointing, one time for a period not to exceed ninety days, a wholesaler to temporarily service a sales territory not designated to another wholesaler, until such time as a wholesaler is appointed by the supplier. A wholesaler who is designated to service the sales territory during this period of temporary service shall not be in violation of this Chapter and, with respect to the temporary service territory, shall not have any of the rights provided under R.S. 26:805 and 807.
La. R.S. 26:803(1) (emphasis added).
Crown reads the subsection as if it said that contracts in effect on May 26, 1993 "shall be renewed and such renewal shall be consistent" with Chapter 6. In other words, Crown argues that the mandatory "shall" refers to "renewed." Dixie reads the subsection as if it said "if and when a contract which is in effect on May 26, 1993 is renewed, then that renewal shall be consistent" with Chapter 6. In other words, Dixie argues that the mandatory "shall" refers to "consistent"i.e. any renewal must be consistent with Chapter 6. We believe that Dixie's reading is more reasonable as avoiding disruption of existing commercial legal relationships while making Chapter 6 applicable to new such relationships.
Under Crown's reading, contracts which might have terms with years left to run as of may 26, 1993, and which contracts are inconsistent with Chapter 6, would have to be renewed with their terms changed so as to make them consistent with Chapter 6. Such an interpretation would, at the least, create a serious constitutional question. See U.S. Const. Art. I, § 10 ("No State shall ... pass any law impairing the Obligation of contracts[.]"); La. Const. of 1974, Art. I, § 23 ("No law impairing the obligation of contracts shall be enacted."). See generally. Yamaha Motor Corp. U.S.A. v. Bonfanti Industries, Inc., 589 So.2d 575, 582-83 (La.App. 1st Cir.1991) (statute requiring just cause for nonrenewal of marine products dealership agreements could not Constitutionally be applied to contract executed before enactment of statute). If a statute can be interpreted in either of two ways, one of which raises a serious question of the statute's constitutionality and one of which does not, then the court should favor the interpretation which avoids the constitutional question. See Norman Singer, Sutherland's Statutory Construction § 45.11 (5th ed.1992 rev.).
Also, because Chapter 6 is part of the Revised Statutes, it is not retroactive "unless it is expressly so stated." La. R.S. 1:2 (emphasis added). We do not believe that the statutory language relied upon by Crown "expressly" makes Chapter 6 retroactive.[2] The title of Acts 1993, No. 132, which enacted Chapter 6, states that one of the Act's purposes is "to provide for applicability to future agreements." When a statute is susceptible to different meanings, the title of the Act which enacted that statute may be used to determine legislative intent. In re American Waste and Pollution Control Co., No. 93-C-3163 (La.9/15/94), 642 So.2d 1258, 1264; Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1367 n. 22 (La.1991).
Alternatively, even if we assume, for the sake of argument, that the statutory language relied upon by Crown requires, as Crown contends, that contracts in effect on May 26, 1993 which are not consistent with Chapter 6 must be renewed, we believe that that statutory language refers only to the beer supplier prohibited acts addressed by the subsection containing that language. Specifically, subsection La. R.S. 26:803(1), which contains the statutory language relied upon by Crown, is but one of sixteen subsections, each describing prohibited acts, contained *1094 in La. R.S. 26:803. That section, in turn, is but one of twelve sections which make up Chapter 6 as a whole. None of the other subsections of La. R.S. 26:803, and none of the other sections of Chapter 6, even suggest that any contract must be renewed.
Thus, even accepting much of Crown's position for the sake of argument, it is most reasonable to conclude (A) that the language relied upon by Crown requires renewal (if at all) only of contracts which violate prohibitions of subsection La. R.S. 26:803(1) and (B) that the renewal (if it is required) must bring the contract into compliance with that subsection. However, even assuming those two points, they are irrelevant to the present appeal. The only acts prohibited by subsection La. R.S. 26:803(1) are failing to provide a complete written contract and failing to include in that contract an exclusive sales territory. Whether the Agreement in this case violates those prohibitions is a moot issue with respect to the preliminary injunction at issue in this appeal. Dixie has given a notice to terminate the Agreement. Such termination is not addressed by subsection La. R.S. 26:803(1) and so, even if the Agreement had to be renewed under subsection La. R.S. 26:803(1), Dixie's contractual right to terminate (as opposed to the statute's "good cause" requirement to terminate) would not be affected. With the Agreement terminated, the Agreement cannot constitute an ongoing future violation of subsection La. R.S. 26:803(1)or any part of Chapter 6 for that matterand so there is nothing to enjoin.
Crown's brief agrees with the first part of our alternative analysis in that Crown argues that the statutory language it relies upon is applicable only because Crown alleges violations by Dixie of the prohibitions of subsection La. R.S. 26:803(1)failure to provide a written contract which is the complete agreement and which provides an exclusive sales territory. However, Crown goes on to argue that, because the Agreement must be renewed under subsection La. R.S. 26:803(1), the renewed contract must comply with all of Chapter 6 and not just with subsection La. R.S. 26:803(1). In other words, Crown argues, if a contract is inconsistent with subsection La. R.S. 26:803(1), it becomes subject to all of the numerous regulations of Chapter 6's other subsections and sections even though the contract predated the enactment of Chapter 6.
We are not persuaded by Crown's argument. If the legislature did not make Chapter 6 retroactive generally, and for the reasons discussed above it most certainly did not make Chapter 6 retroactive generally, why would it provide that a contract's inconsistency with a single subsection would cause the entirety of Chapter 6 to become retroactive so as to apply to that contract? No reason for such an effect is apparent. Also, we find it inconceivable that, after including a section expressly providing that Chapter 6 would apply only to future contracts, La. R.S. 26:809, the legislature would then provide for retroactive application of the entirety of Chapter 6 by means of a clause inserted in a subsection of narrow application. See La. Civ.Code art. 12 (construe statute's words in context and in light of text of the statute as a whole). We can see that if, for example, a contract had a one year term and the parties simply renewed it annually, perhaps by using the same contract document and either giving a notice of renewal or not giving a notice of non-renewal and so allowing a renewal or reconduction clause to operate, the legislature would want to be sure that Chapter 6 applied to the contract once it was so renewed after the May 26, 1993 effective date of Chapter 6. But, that objective is achieved directly and expressly by La. R.S. 26:809. In sum, there is simply no rationale for the statute to have the meaning asserted by Crown. Cf. La. Civ.Code art. 10 (conform interpretation of statute to statute's purpose).

CONCLUSION
We hold that Chapter 6, enacted in 1993, is not retroactive and does not apply at all to the 1990 Agreement between Crown and Dixie. Alternatively, we hold that, even if subsection R.S. 26:803(1) is retroactive so that it applies to the Agreement, that subsection is irrelevant to the preliminary injunction which is the subject of this appeal. The provisions of Chapter 6 which address contract termination are not included in subsection *1095 R.S. 26:803(1) and, therefore, those contract termination provisions are certainly not retroactive and certainly do not apply to the Agreement. Thus, Chapter 6 does not prevent Dixie from terminating the Agreement. Even assuming (without deciding) that terms of the Agreement violate subsection R.S. 26:803(1), the termination of the Agreement means that there is no ongoing violation to be enjoined.
Accordingly, we vacate the preliminary injunction and remand for further proceedings.
VACATED AND REMANDED.
NOTES
[1] The "Greater New Orleans area" is defined in the affidavit of Angelo Najiola as Orleans, Jefferson, Plaquemines and St. Bernard Parishes. Thus, it is not exactly the same as Crown's ASR which does not include Plaquemines Parish or Grand Isle of Jefferson Parish. However, there is great overlap between the two areas, particularly in terms of population.
[2] Although, under Article 6 of the Civil Code, in the absence of contrary legislation, non-substantive procedural and interpretive laws apply retroactively, Chapter 6 in general, and subsection La. R.S. 26:803(1) in particular are certainly substantive and are not merely procedural or interpretive.